## C. KNIGHT *v.* CARROLLTON RAILROAD COMPANY.

The right of the Carrollton Railroad Company of making a turn-out to communicate with the depot on Nayades street, was a necessary incident to the use of the Railroad.

This was established in the case of the *New Orleans and Carrollton Railroad Company* v. *The Second Municipality of New Orleans*, 1 Ann. 128.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. *Ogden & Duncan,* for plaintiff:

The owner of a lot in a town has a right to the free use of a street. It is a nuisance to obstruct it, and the owner of the lot may maintain a suit to abate such nuisance and to recover damages.

The right of the public authorities to act in such a case, does not divest the right of the lot holder.

The defendants have, in violation of plaintiff's right, and in defiance of the municipal authority, put down their switch under circumstances which show they were acting improperly.

The defendants made their switch into and upon a street on which their charter gave them no right to lay rails.

The plaintiff proved that the defendant's wrongful act was injurious to plaintiff's property, and should have been allowed damages and a judgment to abate the nuisance. 1 An. 128. Sedgwick, Dam. p. 31, 3 note p: 140. See *Appelgate, &c.* v. *The City of Louisville,* and the following authorities there cited :

In case of private nuisances, the remedy by injunction, is maintained upon the ground of restraining irreparable mischief, suppressing interminable litigation, and preventing multiplicity of suits.  Not every case where a party aggrieved by a private nuisance, might have an action at law, will justify the interposition of a court of equity to redress the grievance, and remove the annoyance.  The injury must be such as that from its character it is not susceptible of adequate compensation in damages merely, or such as from its continuance and permanent mischief, occasions a constantly recurring grievance, which cannot be prevented but by injunction.  Every common trespass is not a foundation for injunction, where it is temporary and contingent in its effects. But if it be continued so long as that it becomes a nuisance, an injunction will be granted to restrain the person from continuing it.  *Coulton* v. *White,* 3 Atk. 21.  So a mere diminution of the value of property, without a continuing or irreparable mischief, will not be a sufficient cause for redress in chancery. *Attorney General* v. *Nicol,* 16 Vez. 344: *Gardner* v. *Village of Newburg,* 2 John. Ch. Rep. 161.  *Vanbergen* v. *Vanbergen,* 3 John. Ch. Ca. 287.  But where the injury is continuing and irreparable, as loss of health, loss of trade, loss of the means of subsistence, or in violation of a contract, expressed or implied, or where permanent ruin to property may, or will, ensue by the wrongful act, the courts of equity will interfere by way of injunction in furtherance of justice, and the violated rights of the complainant.  *Attorney General* v. *Nichol,* 16 Vez. 342; *Earl Bathurst* v. *Burden,* 2 Bro. Ch. Rep. 65; *Lane* v. *Nudigate,* 10 Vez. 392; *Robinson* v. *Lord Byron,* 1 Bro. Ch. Rep. 588; *Nutbrown* v. *Thornton,* 10 Vez. 163; *Pusey* v. *Pusey,* 1 Vern. 273.  As to the concurrent jurisdiction of chancery in cases of private nuisances, to interfere by way of injunction, I will add but one more, out of many, viz., the case of *Gardner* v. *The Village of Newburg,* (2 John. Ch. Cas. 164,) in which Chancellor Kent has treated the subject with his usual clearness and examination of precedents and principles.  These cases are clear and conclusive to prove the ancient and established jurisdiction of the court of chancery, to interpose in cases of private nuisances, founded on the necessity of a preventive remedy when great and immediate mischief or material and permanent injury to the comfortable and useful enjoyment of the property, would otherwise ensue.  If the right to the enjoyment on the part of the plaintiff be clear, and the injurious interruption of that right by the defendant, be made out, the plaintiff is not to be sent to law to establish his right.  Such was the course in *Bush* v. *Western,* Finch's Prec. in Cha. 530.  *Finch* v. *Resbridger,* 2 Vern. 390; *Gardner* v. *Village of Newburg,* 2 John. Ch. Rep. 165.  If the plaintiff has a clear right long used, and the interruption to that right is clearly injurious, the plaintiff is not sent to law first to establish that which is already sufficiently plain.  The distinction between a clear right in the plaintiff with an injurious interruption thereof by the defendant, and a doubtful right of the plaintiff, or a doubtful interruption by defendant, will reconcile all the cases upon the subject.

Cases calling for the like remedy in chancery by injunction, are where easements, or servitudes are by grant, conveyance, bargain and sale, covenant, or otherwise annexed to private estates, or where easements of privileges of a public nature, and yet beneficial to private estates, are secured to proprietors of ground contiguous to public streets, squares, or other places dedicated to public uses, the due enjoyment will be protected by injunction, in all such cases, against encroachments.  *Coming* v. *Lowerre,* 6 John. Ch. Rep. 439; Story's Equity injunction, sec. 927, p. 206; *Croton Turnpike Company* v. *Ryder,* 1 John. Ch. Rep. 611; *Ogden* v. *Gibbons,* 4 John. Ch. Rep. 150–160; *Newburgh Turnpike Compang* v. *Miller,* 5 John. Chan. Rep. 111–112; Story's Equity. vol. 2, Injunction, sec. 927, p. 206; *Martin* v. *Nutkin,* 2 P. Wms. 167.

In *Coming* v. *Lowerre,* (6 John. Ch. Rep. 439,) Chancellor Kent granted an injunction to the owners of lots on Vestry street in New York, (which street had been laid out, regulated and paved for about twenty years, the bill avering that the defendant was about building a house on it,) because there "was a

KNIGHT
v.
CARROLLTON R. R.

special grievance to the plaintiffs affecting the enjoyment of their property and the value of it; the obstruction was not only a common or public nuisance, but worked a special injury to the plaintiffs."

An injunction has been granted in favor of a corporation to secure to them their corporate rights and privileges in the enjoyment and perception of their profits from tolls, by restraining short bye roads, commonly called shunpikes. *Croton Turnpike Company* v. *Ryder and others*, 1 John. Chan. Rep. 615; so an injunction was granted to secure the due enjoyment of a statuable right for taking tolls for crossing a bridge, against disturbance in erecting another bridge over the same stream, so near as to draw off passengers. *Newburn Turnpike Conpany* v. *Miller and others*, 5 John. Ch. Rep. 110–111. So also an injunction was sustained, to secure to a corporation the enjoyment of its corporate rights and privileges against an enormous and continuing trespass threatened, in derogation of their corporate franchises. *Osburn* v. *Bank U. S.* 9 Wheat. 5 resol. p. 838–840.

An injunction has been granted against a corporation to restrain the abuse of the powers granted them, which abuse operated to the injury of other persons. *Gardner* v. *The Village of Newburgh*, 2 John. Ch. Rep. 168; *Agar* v. *The Regent's Canal Company*, Cooper's Equity Rep. 77; *Coats* v. *The Clarence Railway Company*, 1 Russ and Myln, 181; 2 Story's Equity, Injunction, sec. 927, p. 206.

In cases of trespass done or threatened, where the mischiefs would be irreparable, or continuing and constantly recurring, or would impair the just and comfortable enjoyment of the property in future, courts of equity have interposed by injunction in very many cases, to prevent and restrain such irreparable mischief, or such multiplied vexations, and such constantly recurring causes of litigation. If indeed courts of equity did not interfere in such like cases, the justice of the country would be very lame and inadequate. *Mitchell* v. *Dorrs*, 6th Vez. 147; *Hanson* v. *Sardon*, 7th Vez. 307 to 308; *Crockford* v. *Alexander*, 15th Vez. 138; *Thomas* v. *Oakley*, 18th Vez. 184; *Cowper* v. *Baker*, 17th Vez. 128; *Kinder* v. *Jones*, 17th Vez. 110; *Robinson* v. *Lord Byron*, 1 Bro. Ch. Rep. 589; *Mayor of York* v. *Pilkington*, 1 Atk. 284; *Coulton* v. *White*, 3 Atk. 21; *Livingston* v. *Livingston*, 6 John. Ch. Rep. 438; 2 Story's Eq. Inj. sec. 928–929, p. 207; 1 Eq. ca. ab. (bill F) p. 79.

In all the aforegoing classes, it may be stated to be the practice of the courts, if the rights of the plaintiffs be clear, and the injury complained of be certain, to grant a perpetual injunction, on final hearing, without any trial at law. But if the right be doubtful, the practice is to order an issue to be tried at law to ascertain the fact; to grant an injunction in the meantime against the mischief, threatened or progessing, and against all injurious proceedings; and when the right is settled at law, then to decree perpetual injunction. If the rights asserted, and the injury complained of, be sufficiently colorable so as to induce the court to take cognizance, and retain the case by directing a trial at law, the injunction in the interim is granted to restrain injurious proceedings until the trial can be had. *Ryder* v. *Bentham*, 1 Vez. Sen. 543; 2 Story's Eq. Inj. sec. 927, p. 207.

It is likewise the practice, upon application for injunction, after answer comes in, to hear affidavits in support of the injunction, (although taken before the appearance of the defendant.) *Robinson* v. *Byron*, 1 Bro. Ch. Rep. 589; *Gibbs* v. *Cole*, 3 P. Wms, 255; *Isaac* v. *Humpage*, 1 Vez. jun. 427.

Town is the genus, and burghs, villages and cities are the species. The meaning of town is derived from the Latin and the Norman French "villa, and vicus and ville." "It is called vicus because it is prope viam," hard by a way or street. "Villa est ex pluribus mansionibus vicinata, et collata ex pluribus vicinis." (" A town is a neighborhood, or rows of houses, and a congregation, of many neighbors.") " If a town be decayed so as no houses remayne, yet it is a town in law." Littleton, sec. 171, co. Litt. 115 b. By this it appears that a street is an essential ingredient in the composition of a town. " A town is called vicus;" a street or rows of houses one close to another, with a way between the rows. A block of buildings, or a row of houses without a street, does not make a town. They may make a spacious country seat, but not a town. A street must be interposed or superadded. " Villa est ex pluribus mansionibus vicinata, et collata ex pluribus vicinis." A town is a neighborhood of many mansions, and a congregation of many neighbors. A street, or

common way, between these habitations, for common use and convenience of all the neighbors or dwellers in these neighboring mansions, is an essential ingredient in the making of a town. Vicus, a street or rows of houses near the one to another, with a way or street between the rows, is the sense in which the word vicus is used by approved Latin authors. It is so explained by Lexicogrophers—it is so used by Cicero, "vicus rusticus," a village.

A town without a street is not an intelligible or conceivable idea. In legal language, or in common parlance, it is unknown—it is a nonentity.

The act itself directs the land to be laid out into lots "with convenient streets." Convenient to whom? To the purchasers of lots, to the inhabitants of the houses to be built, to the freeholders and inhabitants of the town. To these, those convenient streets are promised, shown, and assured in the sale, included in the guaranty of all the rights, privileges and immunities which the freeholders and inhabitants of other unincorporated towns held, had, and enjoyed. The free and common use of these convenient streets were easements, and privileges annexed to the fee simple estates of the purchasers of lots, running with the title to the lots, belonging also to the tenants under the proprietors of lots, belonging to all "the freeholders and inhabitants" of this town, as amply as were held, had and enjoyed by the freeholders and inhabitants of other towns not incorporated.

In general, under the grant of a thing, whatever is parcel of it, or necessary to the beneficial use of the thing, or in common acceptation and intendment included in it, passes to the grantee. Good faith affixes itself to the intention; fraud insists on the dead letter, and evasions of the spirit of the agreement. The reason of the agreement, the motive which led to the making of it, and the view proposed and held out as an inducement to the making of the agreement, are certain means of establishing the true sense and intention. Every interpretation that leads to an absurdity, is to be rejected. A man bequeaths his house to one, and his garden to another. The only entrance to the garden it through the house. It would be absurd to suppose the testator had left the legatary a garden into which he could not enter. We must therefore understand the bequest of the house as implying the condition of allowing a passage to the garden. It would be absurd to suppose that the one party bought, and the other party sold, a lot of ground without the means of ingress and egress. This absurdity would be heightened and converted into a fraudulent interpretation, when the vendor had shown a street laid out in front of the lot so sold, and in front also of various other lots offered for sale, in a town which he had established. On the other hand, as various other persons, purchasers on the same street, are equally concerned in the use of the street for their convenient ingress and eagress, and comfortable enjoyment, it would be absurd to suppose that the vendor intended to sell the entire street in front of any one lot to a particular purchaser. The good sense of the transaction, and the common understanding of men on the subject is, that when streets are laid out, and lots adjoining are sold by the map and plan of the streets, that no one acquires the exclusive right, or fee simple estate, in the land of the street, or in any part, but that all the purchasers and holders of lots in the town are to have the right of way, as an easement and privilege annexed to their estates in the lots. To hold out the street to the view and understanding of all persons as a convenience, and as inducement to purchase lots, whilst the vendor secretly intended, after all the sales were effected, to claim the exclusive right to the street as being in himself, to obstruct, dispose, hinder, or block up, or alienate, at his will and pleasure, would be perfidious, against which the laws would furnish competent redress. The proprietor of the ground so laying off lots and streets, would be considered as trustee of the streets for the use and benefit of the purchasers and inhabitants of the town so laid out and sold; that all were entitled in common to pass and repass, to use the streets as easements and privileges, free and common. The decisions are in confirmation of these principles. They establish the doctrine that each proprietor adjoining the street is entitled to an easement, as a right of way; that this easement and right of way is not limited to midway, of the street next adjoining his lot, but extends the whole breadth, and to the full dimensions of the street. It is co-extensive with the street. The cases warrant the doctrine in cases of sale by a map and plan of streets and lots laid out for a town, and designated as such upon the map or plan, that the purchaser of a building lot has, by his deed, an implied

KNIGHT
v.
CARROLLTON R. R.

covenant for an easement—a right of way in the street to the full extent of its dimensions. Mayor, &c. city of New York respecting Lewis street, 2 Wendell N. Y. Rep. 474-5 ; *City of Cincinnati* v. *White*, 6 Peters, 431 ; *Beaty* v. *Kurtz*, 2 Peters,. 256 ; *Town of Pawlet* v. *Clarke*, 9 Cranch, 272 ; *Lade* v. *Sheppard*, Strange, 1004; *Jackson* v. *Hathaway*, 15 John. 454 ; *Dean* v. *Broadsleet*, 6 Massa. Rep. 332. *Liford's* case, 11 Co. 52 ; *Pomfret* v. *Ricroft*, 1 Saund. 323—note ; Vattel Law Nat. book 2. chap. 17, sec. 290–293, pp. 238, 240: and *Trustees of Lexington* v. *McConnel*, 12 Wheat. 582. In this last case, the Supreme Court of the United States decided, that a lot with a spring on it, designated on the map and plan of the town of Lexington, as a public spring, was thereby dedicated to common use, and could not be acquired as private property under the terms held out to settlers in the town.

*Benjamin & Micou*, for defendant.

SLIDELL, C. J. The right of making a turn-out to communicate with the depot on Nayades street, was a necessary incident to the use of the Railroad, and was recognized in the decision in 1 An. 128.

From an inspection of the plan offered in evidence by the defendants, and which is shown to be more accurate than that annexed to the plaintiff's petition, it appears that the whole of the track is within the parallel side lines of Nayades street, although it is true that by reason of the intersection of Nayades and Calliope streets, a portion of the ground crossed by the track, may be said to be common ground, both of Calliope and Nayades streets. The defendants, under a fair interpretation of the charter, cannot be said to have laid the turn-out of their track out of Nayades street.

As to damages claimed by plaintiff, it is sufficient to say that the District Judge was of opinion, that the evidence of damage having been sustained by her was unfatisfactory, and that a case of positive damage was not made out. The evidence was conflicting, and we cannot say the Judge came on this point of fact to an erroneous conclusion.

Judgment affirmed, with costs of appeal to be paid by appellant.